```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
LINDA S. NEWMAN,                      :
                                      :        14-cv-3140 (JSR)
        Plaintiff,                    :
                                      :        MEMORANDUM ORDER
        -v-                           :
                                      :
CAPITOL LIFE INSURANCE COMPANY,       :
                                      :
        Defendant.                    :
-------------------------------------x
```

9/16/14

JED S. RAKOFF, U.S.D.J.

Plaintiff Linda S. Newman, a resident of New York City, brought this suit against defendant Capitol Life Insurance Company ("Capitol Life"), a Texas Corporation, for breach of contract, conversion, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. Amended Complaint dated June 30, 2014 ("Amended Compl.") ¶¶ 20-39. She alleges that in 1978, she purchased a retirement annuity issued by Capitol Life and serviced by Security First Life Insurance Company ("Security First") under a group contract from the now-defunct securities brokerage firm Shearson Hayden Stone ("Shearson"), but has been unable to collect her annuity payments. Id. ¶¶ 9-11, 16-19. Capitol Life moved to dismiss the Amended Complaint for lack of personal jurisdiction and, with respect to the second, third, and fourth causes of action and demand for punitive damages, for failure to state a claim upon which relief may be granted. On August 29, 2014, after full briefing and oral argument, this Court issued a "bottom-line" Order granting defendant's motion to dismiss for lack of personal jurisdiction

1

(without prejudice to re-filing in another jurisdiction). See Order, August 29, 2014. This Memorandum Order sets forth the reasons for that ruling.

The relevant factual allegations are as follows. Newman alleges that, at the time she purchased the annuity, she resided in New York City and maintained a brokerage account at Shearson, at which her primary contact was Mr. William Haber. Amended Compl. ¶¶ 5-6. Haber discussed the annuity purchase with her over the phone from her New York apartment and met with her at his New York office. Id. ¶¶ 6, 8. Following these discussions, Newman purchased an annuity under a Shearson group contract, which provided for minimum guaranteed payments of $545,556 in exchange for a one-time premium payment of $50,000. Id. ¶¶ 9-10. Sometime thereafter, she picked up the Annuity Certificate at Shearson's New York office, where it had been mailed by the servicer, Security First, to another Shearson broker, Mr. Lawrence Marcus. Id. ¶ 12.

Thus, according to Newman, the transaction was solicited, negotiated, and completed in New York City. Despite these allegations, however, the "Enrollment Form and Statement of Participant" attached to the Amended Complaint lists a New Jersey post office box as the annuitant's address and indicates that it was executed in Millburn, New Jersey. See Amended Compl. ¶ 7 & Ex. A. The Enrollment Form is countersigned by Marcus. Id.

On defendant's jurisdictional motion, however, the Court can consider facts outside the pleadings. See Yellow Page Solutions,

Inc. v. Bell Atl. Yellow Pages Co., 00 CIV. 5663, 2001 WL 1468168,
at *1 (S.D.N.Y. Nov. 19, 2001). Capitol Life has adduced evidence
that it is not and has never been licensed to do business in the
State of New York, does not market or sell annuity contracts in New
York or to New York residents, and has no office, employees, bank
accounts, or property in New York. Declaration of Chad Alan Leiding
dated June 12, 2014, ¶ 3-4. It does acknowledge that, around 1978,
Marcus sold Capitol Life annuity products of the type Newman
allegedly purchased in neighboring states, but avers that, to its
knowledge, he never did so in New York. Second Declaration of Dan
Carpenter dated July 16, 2014, ¶¶ 4-5; Declaration of Lawrence D.
Marcus dated June 11, 2014, ¶ 4.

　　　Newman has the burden to make a prima facie showing that
jurisdiction exists by "pleading good faith allegations sufficient
to establish jurisdiction." Capitol Records, LLC v. VideoEgg, Inc.,
611 F. Supp. 2d 349, 357 (S.D.N.Y. 2009). It is true that, absent an
evidentiary hearing, pleadings and affidavits are construed "'in the
light most favorable to the plaintiff and doubts are resolved in the
plaintiff's favor, notwithstanding a controverting presentation by
the moving party.'" Ross v. UKI Ltd., 02 Civ. 9297, 2004 WL 384885,
at *3 (S.D.N.Y. Mar. 1, 2004) (quoting A.I. Trade Fin. Inc. v. Petra
Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)). However, the Court is
"'not bound to accept as true a legal conclusion couched as a
factual allegation.'" Jazini v. Nissan Motor Co., 148 F.3d 181, 185

(2d Cir. 1998) (quoting Papasan v. Allain, 478 U.S. 265, 286
(1986)).

In federal diversity cases such as this one, personal
jurisdiction is governed by the law of the state in which the
district court sits. Id. at 183-84. Newman asserts that the Court
has personal jurisdiction over Capitol Life under two provisions of
New York law. First, she invokes New York's long-arm statute, which
provides: "As to a cause of action arising from any of the acts
enumerated in this section, a court may exercise personal
jurisdiction over any non-domiciliary … who in person or through an
agent … transacts any business within the state." N.Y. C.P.L.R. §
302(a)(1). To determine the existence of jurisdiction under this
subsection, the Court must decide "(1) whether the defendant
'transacts any business' in New York and, if so, (2) whether this
cause of action 'aris[es] from' such a business transaction." Best
Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007)
(internal citation omitted). Under the first prong, the Court looks
to the "'totality of the defendant's activities within the forum'"
to determine whether it has engaged in "'purposeful activity'"
there. Id. (internal citations omitted). Under the second prong, the
Court inquires whether there is "an articulable nexus, or a
substantial relationship, between the claim asserted and the actions
that occurred in New York." Id. (internal citation omitted).

Second, Newman alternatively relies on provisions of the New
York Insurance Law that extend long-arm jurisdiction to non-resident

insurers that engage in any of the following acts within New York, "effected by mail or otherwise":  "(A) the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein, (B) the solicitation of applications for such contracts, (C) the collection of premiums, membership fees, assessments or other considerations for such contracts, or (D) any other transaction of business." N.Y. Ins. L. § 1213(b)(1).

To support her claims of jurisdiction, Newman alleges acts that, if taken by Capitol Life itself, would easily establish jurisdiction under either Section 302(a)(1) of the CPLR or Section 1213(b)(1) of the Insurance Law, viz.: she was solicited to apply for the annuity in New York; negotiations for its purchase took place in New York; she resided in New York at the time of purchase; and the Annuity Certificate was delivered to her in New York. However, Newman concedes that Capitol Life did not itself undertake these acts. Instead, Newman alleges, Capitol Life acted through Shearson and Security First, whose acts, she contends, establish jurisdiction over Capitol Life by virtue of their alleged agency relationship with Capitol Life.

The trouble with Newman's argument is that, even if she could show that Shearson and Security First were Capitol Life's agents, a Court may not exercise jurisdiction over a non-resident principal on an agency theory "absent any proof that [the principal] knew about, authorized, and exercised some control over the actions of" the

5

alleged agent. Ross, 2004 WL 384885, at *6 (citing Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981)). This is true even if the agent presents himself to an unsuspecting counterparty as fully vested with his principal's authority — "[o]ne who deals with an agent does so at his peril." Ford v. Unity Hosp., 32 N.Y.2d 464, 472 (N.Y. 1973). If this rule seems harsh, it is in place because ultimately, New York may not, by statute, extend its jurisdiction beyond well-established constitutional limits to reach a defendant who has not "purposefully availed" itself of the privilege of doing business in this State. Id. at 470-71 (interpreting the predecessor to N.Y. Ins. L. § 1213). A purported agent's ultra vires act, of which the principal had no actual knowledge, let alone consent or control, cannot constitute such "purposeful availment," and therefore cannot bind the principal for jurisdictional purposes. Id.

Newman has failed to allege any fact from which the Court may infer that Capitol Life had actual knowledge of Shearson and Security First's activities in New York. Nor has she made any factual allegation that could support the inference that either entity had actual authority to conduct business here or that either entity reported its New York operations back to Capitol Life. To the contrary, she has presented nothing to contradict Capitol Life's assertion that it purposefully avoided doing business in New York, since it was not licensed in this State, and that it would have rejected an insurance policy covering a New York resident. See Declaration of Dan Carpenter dated June 12, 2014, ¶ 3. Moreover,

Newman admittedly listed a New Jersey address on her Enrollment Form and represented in writing that it had been executed in New Jersey. See Amended Compl. ¶ 7 & Ex. A. Thus, the documentation that Newman submitted to Capitol Life would not have alerted it to the fact that she was, contrary to her written representations, a New Yorker.

Newman seeks to bridge this gap by submitting the expert affidavit of Timothy Morbach, who worked as a licensed insurance broker at a brokerage firm in Michigan (not Shearson) at the time of Newman's annuity transaction. Affidavit of Timothy Morbach dated July 28, 2014, ¶ 1. Morbach asserts, inter alia, that Capitol Life "should have known" the full demographic details of enrollees in the group annuity contract, including Newman's true residence, through Shearson's "account relationship." Id. ¶ 8-10. It is unclear what qualifies Morbach to opine on compliance practices at either Shearson or Capitol Life, given that he worked at a different firm in a different state; but in any event, his affidavit is little more than rank speculation and cannot supply the missing link to jurisdiction here.

In short, Newman has failed to make a prima facie showing that this Court has jurisdiction over Capitol Life under either the CPLR or the New York Insurance Law. Accordingly, the Court hereby reaffirms its dismissal of the Amended Complaint for lack of

personal jurisdiction, without prejudice to plaintiff's re-filing in another jurisdiction.[1] Clerk to enter judgment dismissing the case.

SO ORDERED.

Dated:      New York, NY
            September 15, 2014

                                              JED S. RAKOFF, U.S.D.J.

---

[1] The Court therefore does not reach Capitol Life's arguments regarding the sufficiency of the Amended Complaint under Rule 12(b)(6).